## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

WB SERVICES, INC.,

    Plaintiff,

v.                                       CASE NO. 1:21-cv-00008

NATURE COAST DEVELOPMENT
GROUP, LLC, VILLASIS, LLC, FREEDOM
BANK n/k/a SEACOAST NATIONAL
BANK, BARRETTA & BREWER
ASSOCIATES, INC., and DANIEL
BREWER,

      Defendants.                      /

## **COMPLAINT**

COMES NOW, Plaintiff, WB Services, Inc. ("Plaintiff"), by and through its undersigned counsel, and hereby sets forth its Complaint as follows:

## **PARTIES, JURISDICTION, & VENUE**

1.    Plaintiff is a corporation duly organized under the laws of the State of Ohio and has its principal place of business in Millersburg, Ohio.  Plaintiff is authorized to conduct business in the state of Florida under the alternate name WB Contracting Services, Inc.

2.    Defendant Nature Coast Development Group, LLC ("Nature Coast"), is a limited liability company organized under the laws of the State of Florida with its principal place of business in Fanning Springs, Florida.  Nature Coast has three

1

members, all individuals and none are citizens of Ohio.  Nature Coast can be served with process through its registered agent, Robert J. Beauchamp, 105 SE Park Ave., Chiefland, Florida 32626.

3.      Defendant Villasis, LLC ("Villasis" and, collectively with Nature Coast, the "Defendants"), is a limited liability company organized under the laws of the State of Florida with its principal place of business in Fanning Springs, Florida. None of the members of Villasis are citizens of Ohio.  Villasis can be served with process through its registered agent, Marites R. Padot, 7272 Cardinal Trail, Fanning Springs, Florida 32693.

4.      Freedom Bank was a state banking institution organized under the laws of the State of Florida with its principal place of business in Florida.  Freedom Bank was acquired by and merged with and into Seacoast National Bank, with Seacoast National Bank as the surviving bank and entity.  Freedom Bank and Seacoast National Bank are referred to collectively as the "Bank."  Seacoast National Bank is a national banking association with its principal place of business in Florida. Seacoast National Bank is a wholly owned subsidiary of Seacoast Banking Corporation of Florida, a corporation organized under the laws of the State of Florida with its principal place of business in Florida.  Seacoast National Bank may be served with process through its registered agent, Kevin Picart, 815 Colorado Avenue, Stuart, Florida 34955.

5.     Defendant Daniel Brewer ("Brewer") is an individual resident and citizen of Florida.  Brewer can be served with process at 310 SE Mizner Blvd., Boca Raton, Florida 33432.

6.     Barretta & Brewer Associates, Inc. ("B&B Associates") was a corporation organized under the laws of the State of Florida with its principal place of business in Boca Raton, Florida.  B&B Associates may be served with process through its registered agent Baretta & Brewer Associates, Inc., 310 SE Mizner Blvd., Suite 1002, Boca Raton, FL 33432-6064.

7.     B&B Associates is a dissolved entity and was dissolved on or before September 27, 2019.

8.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and the parties are of diverse citizenship.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

10.     At all times material hereto, Nature Coast and Villasis were owners of real property located at the corner of US 19 & State Route 26, Fanning Springs, FL 32693 with Parcel ID 20-10-14-0000-0020-0015 (the "Property").

11.     This action concerns construction of an 88 room Best Western Hotel on the Property (the "Project").

12.     Plaintiff was engaged by Nature Coast to act as the general contractor for the construction of the Project.  In its role as the general contractor, Plaintiff furnished labor, services and materials for the construction of the Project and the improvement of the Property.

13.     The Bank was the lender for the Project, providing Nature Coast with a construction loan in the amount of $9,800,000.

14.     B&B Associates was a business organization engaged in the practice of architecture.

15.     B&B Associates and Brewer provided architectural services for the Project and designed the Project.  All architectural drawings and plans for the Project were issued in the name of B&B Associates and signed and stamped by Brewer.

16.     Brewer was responsible for and filled multiple roles on the Project, including:

  a.  The Architect of Record for the Project;

  b.  Nature Coast's designated Owner's Representative for the Project;

  c.  The private provider of building code inspection services for the Project; and

  d.  The threshold inspector for the Project.

17.     The Project proceeded via the use of a private provider to perform building code inspection services in lieu of such services being performed by the

local building official.  Brewer performed all plan reviews and provided all building inspections for the Project.

18.     Threshold inspections also were provided by Brewer and SRI Consultants, Inc.  Brewer is a director of SRI Consultants, Inc. and is the qualifying agent, qualifying architect, and responsible supervisor for SRI Consultants, Inc.

19.     On or about July 3, 2020, Plaintiff submitted its a payment request for unpaid work performed through June 25 in the amount of $353,836.38.

20.     Brewer failed and/or refused to issue a full or partial Certificate of Payment or to provide notice to Plaintiff of any proper reason for withholding certification in whole or in part.

21.     Unbeknownst to Plaintiff at the time, when Plaintiff submitted the payment request Nature Coast was already in default under its loan agreement with the Bank.

22.     Despite not receiving payment, Plaintiff continued to perform and continued to work on the Project and, in an effort to obtain even partial payment, Plaintiff submitted numerous revised payment requests and other documents. However, Brewer continued to withhold certification in whole or in part.

23.     On August 5, 2020, all required permits for the Project were issued.  A true and correct copy of the August 5, 2020 permit is attached hereto as Exhibit "D."

24.    On August 28, 2020, Plaintiff submitted a revised payment request # 14 (the "Certified PR#14") in the amount of $269,877.45.  A true and correct copy of Certified PR#14 is attached hereto as Exhibit "E."

25.    On August 29, 2020, Brewer issued a Certificate for Payment of Certified PR#14 certifying that Plaintiff was entitled to payment in the amount of $269,877.45.  *See* Ex. "E."

26.    On September 3, 2020, the Bank's independent inspector, GLE Associates, Inc., agreed that Certified PR#14 should be paid but recommended payment by the Bank from loan funds in the amount of $262,676.09.

27.    Payment to the Plaintiff of the amount certified was due no later than September 7, 2020.

28.    No payment was or has been made to Plaintiff for any portion of the amount certified in Certified PR#14 nor for any other labor, services, or materials furnished by Plaintiff after May 25, 2020.

29.    Despite not receiving payment, Plaintiff continued to furnish labor, services and materials until Nature Coast barred Plaintiff from the Project and the Property.

30.    On September 4, 2020, B&B Associates issued a letter purporting to serve as both a notice of default and a Certification by the Architect for Owner's

Cause to Terminate (the "Notice of Default").  A copy of the Notice of Default is attached hereto as Exhibit "F."

31.    Even if true, none of the items or issues identified in the Notice of Default would be a material breach or default or give rise to a valid basis for termination.

32.    On September 20, 2020, Nature Coast sent Plaintiff a Notice of Termination providing notice that Nature Coast had terminated Plaintiff from the Project.  A true and correct copy of the September 20, 2020 Notice of Termination is attached hereto as Exhibit "G."

33.    Nature Coast has prohibited Plaintiff from accessing the Property or from securing the site, Project, or on-site materials to prevent damage or theft. Nature Coast has also prohibited Plaintiff from securing or recovering the tools and equipment belonging to WB Services or its employees or subcontractors that were on the Property when Nature Coast terminated Plaintiff.

34.    Nature Coast has not taken reasonable measures to safeguard and protect the Project or Property or any of the property of Plaintiff that remains on the Property.

**The Written Contract Documents**

35.    On or about December 18, 2018, Nature Coast and Plaintiff entered into an agreement whereby Plaintiff agreed to provide certain labor, services and

materials for construction on the Property of an 88 room Best Western Hotel (the "Hotel"), excluding site work, site concrete, FF&E and the Pool/Patio, for the initial contract sum of $6,474,000.00 (the "Construction Contract").  A true and correct copy of the Construction Contract is attached hereto as Exhibit "A."

36.     On or about December 18, 2018, Nature Coast and Plaintiff also entered into an agreement whereby Plaintiff agreed to provide certain labor, services and materials related to the Hotel for a scope of work that "only includes the following scopes of work:  Site Work, Site Concrete, FF&E and the Pool/Patio" for the initial contract sum of $1,676,000.00 (the "Supplemental Contract" and, collectively with the Construction Contract, the "Contracts").  A true and correct copy of the Supplemental Contract is attached hereto as Exhibit "B."

37.     After the Contracts were executed, the design for the Project underwent significant developments and substantial changes.  However, with few exceptions, Nature Coast has failed and/or refused to approve or execute change orders for such design changes.

38.     Pursuant to the terms of the Contracts, Plaintiff was to achieve substantial completion "[n]ot later than Three Hundred Sixty (360) calendar days from the date of commencement of the work."  The date of commencement of the work was established as "no later than 10 business days after the project has funded

and all required permits are approved and the Notice of Commencement has been filed."

39.    The incomplete and piecemeal nature of preparation of the design documents resulted in delays in permitting and delays, disruption, and interference to the work and significant unanticipated and unforeseeable additional costs and inefficiencies.

40.    All required permits for the Project were first obtained on August 5, 2020.  Therefore, the date of commencement of the work could be no earlier than August 5, 2020.

41.    Pursuant to the terms of the Contracts, without considering any adjustments in the Contract Time to which Plaintiff is entitled as provided in the Contracts, Plaintiff had until at least July 31, 2021, at the earliest, to achieve substantial completion of the Project.

42.    Section 9.1.2 of the Contracts identify, as part of the Contracts, the "AIA Document A101™—2017, Exhibit A, Insurance and Bonds" (the "A101 Insurance Exhibit").  However, no copy of the A101 Insurance Exhibit was appended to either of the Contracts and, upon information and belief, no such document was prepared for use with either of the Contracts.  Section 9.1.2 of the Contracts is stock, unmodified form language in the "AIA Document A101™— 2017, Standard Form of Agreement Between Owner and Contractor."

9

43.     Section 9.1.3 of the Contracts identify, as part of the Contracts, the "AIA Document A201™—2017, General Conditions of the Contract for Construction" (the "A201 General Conditions").  However, no copy of the A201 General Conditions was appended to either of the Contracts and, upon information and belief, no version of the A201 General Conditions was prepared for use with either of the Contracts.  Section 9.1.3 of the Contracts is stock, unmodified form language in the "AIA Document A101™—2017, Standard Form of Agreement Between Owner and Contractor."

44.     Nevertheless, Nature Coast based its termination upon various purported violations of terms or provisions it claimed were included in the A101 Insurance Exhibit and A201 General Conditions that it claimed were prepared and agreed upon by the parties.

45.     On or about September 12, 2020, Nature Coast or its attorney fabricated documents, including an A101 Insurance Exhibit and A201 General Conditions, and submitted them to Plaintiff's surety on the payment and performance bonds to support the purported default and termination and Nature Coast's demand for performance under the bonds.  These documents were presented as though authentic and without any suggestion of their having been fabricated by Nature Coast's counsel.

46.    After questions began to arise as to the source of such documents, Nature Coast's counsel eventually acknowledged that she had fabricated the documents upon which the termination, at least in part, was based and, in fact, no A101 Insurance Exhibit or A201 General Conditions exist or were prepared or agreed to by the parties.  A copy of Ms. Hayes' November 6, 2020, email is attached hereto as Exhibit "H."

**The Loan Agreement**

47.    On or about February 25, 2019, the Bank and Nature Coast, Villasis, and the individual members of Nature Coast entered into a Restated Loan Agreement and a First Amendment to Restated Loan Agreement, attached hereto as Exhibits "I" and "J" (collectively, the "Loan Agreement").

48.    Under the Loan Agreement, the Bank agreed to make a $9,800,000.00 construction loan to Nature Coast for the purpose of funding the development and construction of the Project.

49.    The Loan Agreement provided, amongst other things:

   a.  The Architect for the Project shall be B&B Associates;

   b.  The "Available Construction Proceeds" are the "amount of the Loan available to pay the Contract Price and Supplemental Contract for completion of the Improvements, other than costs of acquisition of the Hotel Real Estate Security, refinance of the Original Loan, Soft

Costs, Contingency Reserve, Operating Supply Reserve, Operating Cash Liquidity Reserve, Interest Reserve, purchase of furniture, fixtures and equipment ("Furniture Fixtures and Equipment Reserve"), [and] Closing Costs, which is estimated to be Seven Million One Hundred Twenty Nine Thousand Five Hundred and 00/100 Dollars ($7,129,500.00)";

c. "Furniture Fixtures and Equipment Reserve" is defined as the cost of purchase of furniture, fixtures and equipment and was the sum of $900,000 to be used to fund such costs under the Supplemental Contract;

d. "Contingency Reserve" means the portion of the Loan proceeds set aside for change orders and cost overruns that would not be required to be funded by Nature Coast;

e. "Contract Price" means "the price of construction of all of the Improvements (other than those covered by the Supplemental Contract) calculated in accordance with the Construction Contract not to exceed $6,474,000.00, exclusive of the $200,000.00 contingency reserve…" and any increase in such costs was to be funded by Nature Coast;

f. "Funding Approval Date" was March 15, 2019;

g. "Improvements" means "construction improvements and associated amenities to be constructed … in accordance with the Construction Contract and Supplemental Contract, which shall include a Best Western Premier hotel of ***approximately 65,000 square feet consisting of 5 stories, 85 rooms***, horse stables, and related amenities, consistent with the Plans and Specifications…" (emphasis added)

h. "Supplemental Contract" means "an agreement for equipping the furniture fixtures and equipment for the Improvements between [Nature Coast] and [Plaintiff], dated December 18, 2018…"

i. "Supplemental Contract Price" means "the price of construction of all of the Improvements covered by the Supplemental Contract calculated in accordance with the Supplemental Contract not to exceed $1,676,000.00 … and any increase above $1,676,000.00 shall be funded as Borrower's Equity Construction Funds…"

j. "Total Contract Price" means "the combined amount of the Contract Price and the Supplemental Contract Price, of $8,150,000.00 … and any increase above $8,150,000.00 shall be funded as Borrower's Equity Construction Funds."

50.     Pursuant to Section 7(B)(iv) and (v) of the Loan Agreement, Nature Coast was required to sign and submit draw requests to the Bank and, in doing so, represented and certified to the Bank the continued accuracy of all warranties in the Loan Agreement and that all contracts and permits were in good standing.

51.     Pursuant to Section 7(D) and 11(C) of the Loan Agreement, any amount required for the Furniture Fixtures and Equipment Reserve in excess of $900,000, as well as other costs under the Supplement Contract, were to be funded by Nature Coast.

52.     The Bank either has not disbursed or distributed all funds available under the Loan Agreement or, if it has, it reallocated such funds for other purposes without authorization.

53.     The Bank ceased funding under the Loan Agreement without notice to Plaintiff.

54.     The Bank was aware of Plaintiff's ongoing performance and took no steps to notify Plaintiff that it had ceased or intended to cease funding, instead allowing Plaintiff to continue to perform in reliance upon its belief that the Bank would continue to fund the loan.

55.     The Bank has declared Nature Coast in default under the Loan Agreement.  A copy of the October 19, 2020 letter from the Bank is attached hereto as Exhibit "K."  Amongst the reasons stated for the Bank's default were Nature

Coast's termination of Plaintiff, Nature Coast's failure to pay Plaintiff, and Nature Coast's failure to deposit funds as required under the Loan Agreement.  The letter notes that Nature Coast had been in default of the Loan Agreement since late May, 2020, coinciding with the time that Brewer ceased certifying Plaintiff's payment requests and Nature Coast last paid Plaintiff for its work.

**The Architect**

56.    Nature Coast had an obligation to retain an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in Florida for the duration of the Project.

57.    Pursuant to Florida law, a business organization may not engage in the practice of architecture unless its qualifying agent is a registered architect.

58.    As a business organization, B&B Associates may not engage in the practice of architecture unless it has a registered architect as a qualifying agent.

59.    From at least the fall of 2019 forward, B&B Associates has not been qualified by a registered architect under Florida Statutes, § 481.219.

60.    Accordingly, B&B Associates was not permitted to engage in the practice of architecture and could not legally act as an "architect" or otherwise provide architectural services.

61.    The Notice of Default dated September 4, 2020, purports to have been issued by B&B Associates and on B&B Associates' letterhead, despite B&B

Associates having been dissolved nearly one year earlier.  The Notice of Default is not sealed by a registered architect and does not contain the license number of a registered architect.

62.    Effective November 25, 2019, Brewer became the qualifying architect for SRI Consultants, Inc. and, effective July 1, 2020, Brewer became the qualifying architect for Architects Brewer LLC.   Shortly thereafter, Plaintiff began experiencing difficulty obtaining certification of its payment requests.

63.    Nature Coast did not replace B&B Associates or notify Plaintiff that B&B Associates was no longer legally able to furnish architectural services.

64.    At the time of the Notice of Default, Brewer was not a qualifying architect for B&B Associates and B&B Associates had been dissolved.

65.    Although the Notice of Default states that "Contractor's ongoing default warrants 10-day notice of the Owner's intent to correct the default" and discusses purported circumstances when an owner may correct a default, the Notice of Default does not provide notice of Nature Coast's intent to terminate either the Construction Contract or the Supplemental Contract.

66.    Similarly, the Notice of Default does not state that B&B Associates, Brewer, or any other architect has found that sufficient cause exists to justify termination of either of the Contracts.

67.     All conditions precedent to the bringing of this action have been performed, waived, or otherwise excused.

68.     Plaintiff has retained the undersigned law firm to represent its interests in this action and is obligated to pay reasonable attorneys' fees, which Defendants are liable.

<u>**COUNT I – FORECLOSURE ON LIEN**</u>

69.     Paragraphs 1 through 46 are hereby realleged in their entirety and incorporated herein by reference.

70.     This is an action to enforce a construction lien pursuant to Chapters 713 and 85 Florida Statutes.

71.     Plaintiff and Nature Coast had an agreement for the improvement of the Property.

72.     Pursuant to its agreement with Nature Coast, Plaintiff furnished labor, services, or materials for the construction of the Project and the improvement of the Property.

73.     Plaintiff furnished the last of such labor, services, or materials no earlier than September 12, 2020.

74.     All of the labor, materials, and services performed by Plaintiff have been incorporated into the improvement that was constructed on the above-described

Property, were normal wastage in construction operations, or were specially fabricated materials for incorporation into the improvement.

75.    All conditions precedent to payment have occurred or have been performed.

76.    Plaintiff remains unpaid in the liened amount of Nine Hundred Twenty Four Thousand Five Hundred and Eighty One Dollars and Sixty Two Cents ($924,581.62) under said agreement.

77.    Plaintiff filed and recorded its Claim of Lien in the public records of Gilchrist County, Florida on December 11, 2020.  A copy of the Claim of Lien is attached hereto as Exhibit "C."

78.    There is now due and owing Plaintiff for said labor, services and materials, the lienable sum of $924,581.62, together with accrued interest and attorneys' fees as allowed by Sections 713.29, Florida Statutes.

WHEREFORE, Plaintiff, WB Services, Inc., prays that this Court enter a final judgment adjudicating that Plaintiff has a lien against the above-described property lying in and being in Gilchrist County, Florida, in the amount of $924,581.62, plus interest, together with costs and reasonable attorneys' fees and that in default of payment of said amount to Plaintiff, this Honorable Court order that the above-described property be sold at judicial sale in accordance with the law, and should a deficiency occur after application of the proceeds of the sale, that Plaintiff be granted

a deficiency decree against Defendant and for any and all other relief this Court deems just and proper.

## COUNT II- BREACH OF CONTRACT – CONSTRUCTION CONTRACT (NATURE COAST)

79.     Paragraphs 1 through 68 are hereby realleged in their entirety and incorporated herein by reference.

80.     Plaintiff agreed to provide certain labor, services, and materials for Nature Coast and Nature Coast agreed to pay Plaintiff for such Work.

81.     Plaintiff performed all of its obligations and conditions precedent to the Construction Contract up to the time of Nature Coast's termination of the Construction Contract.

82.     Nature Coast materially breached the Construction Contract in multiple ways, including:

a.  Failing and/or refusing to remit payment to Plaintiff for the Work performed on the Project when due;

b.  Improperly withholding payment without sufficient or proper cause;

c.  Improperly terminating Plaintiff and the Construction Contract without proper cause;

d.  Improperly terminating Plaintiff and the Construction Contract without a valid and proper certification by the architect that sufficient cause exists to justify such action;

19

e.   Improperly terminating Plaintiff and the Construction Contract without providing notice of an intent to terminate in advance of said termination;

f.   Failing to retain or employ an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in Florida;

g.   Failing to provide drawings, plans, specifications, and design documents that were reasonably free from defects;

h.   Failing to provide drawings, plans, specifications, and design documents sufficient to accurately indicate and illustrate the essential parts of the work;

i.   Failing to timely provide adequate design documents and make selections delaying, disrupting, interfering with and adversely impacting Plaintiff's performance of its work;

j.   Failing to approve and sign change orders for changes required in the work;

k.   Failing to timely obtain all permits required for the work so that the work could proceed without delay or disruption.

83.   As a direct and proximate result of Nature Coast's material breaches of the Construction Contract, Plaintiff has been financially damaged and continues to suffer such damage and loss.

84.     Plaintiff is therefore entitled to damages resulting from Nature Coast's breach.

85.     Nature Coast is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by Nature Coast's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Nature Coast Development Group, LLC, for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT III- BREACH OF CONTRACT – SUPPLEMENTAL CONTRACT (NATURE COAST)

86.     Paragraphs 1 through 68 are hereby realleged in their entirety and incorporated herein by reference.

87.     Plaintiff performed all of its obligations and conditions precedent to the Supplemental Contract up to the time of Nature Coast's termination of the Supplemental Contract.

88.     Nature Coast materially breached the Supplemental Contract in multiple ways, including:

    a.  Failing and/or refusing to timely make selections for FF&E and/or OSE;

b.  Failing and/or refusing to approve and execute change orders for changes in design or selection impacting the FF&E for the Project;

c.  Failing to make timely selections delaying, disrupting, interfering with and adversely impacting Plaintiff's performance of its work;

d.  Improperly terminating Plaintiff and the Supplemental Contract without proper cause;

e.  Improperly terminating Plaintiff and the Supplemental Contract without a valid and proper certification by the architect that sufficient cause exists to justify such action;

f.  Failing to retain or employ an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in Florida;

g.  Failing to provide drawings, plans, specifications, and design documents that were reasonably free from defects;

h.  Failing to provide drawings, plans, specifications, and design documents sufficient to accurately indicate and illustrate the essential parts of the work.

89.     As a direct and proximate result of Nature Coast's material breaches of the Supplemental Contract, Plaintiff has been financially damaged and continues to suffer such damage and loss.

90.     Plaintiff is therefore entitled to damages resulting from Nature Coast's breach.

91.     Nature Coast is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by Nature Coast's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Nature Coast Development Group, LLC, for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT IV – UNJUST ENRICHMENT (NATURE COAST)

92.     Paragraphs 1 through 34 are hereby realleged in their entirety and incorporated herein by reference.

93.     This is an action for unjust enrichment and is plead in the alternative.

94.     The Plaintiff furnished labor, services, and materials to Nature Coast with the expectation of being paid.

95.     Nature Coast was aware of the benefit that Plaintiff was providing to it through the furnishing of Plaintiff's labor, services, and materials on the Project.

96.     Nature Coast accepted the labor, services, and materials rendered by the Plaintiff and retained their benefit on the Project.

97.    Nature Coast has failed and/or refused to pay for the labor, services and materials rendered by the Plaintiff.

98.    Nature Coast has been unjustly enriched as a result, and under the circumstances, it would be inequitable for it to retain the benefit without paying Plaintiff for the cost and value of the labor, services, and materials received.

99.    Nature Coast is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by Nature Coast's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Nature Coast Development Group, LLC, for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## **COUNT V – WRIT OF REPLEVIN (NATURE COAST)**

100.    Paragraphs 1 through 68 are hereby realleged in their entirety and incorporated herein by reference.

101.    This is an action for replevin against Nature Coast.

102.    Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention pursuant to Chapter 78, Florida Statutes.

103.   Tools and equipment belonging to Nature Coast remain on the Property and are being detained by Nature Coast, including the following:  mud mixer; crane; dumpster; forks; extension forks; 40' conex box; ICF braces; 12' ICF braces; hand held core drill; core drill with water tank; scaffolding & planks; rollaway scaffolding; hammer drill; Hilti & Dewalt nailer for concrete and metal; concrete saw; circular saw; chop saw; cordless tools; 4 cameras; miscellaneous small tools; print tables, file cabinets and other related items; and, tow behind generator (collectively, the "WB Claimed Property").

104.   To the best knowledge, information, and belief of Plaintiff, the value of the WB Claimed Property is in excess of $800,000.00.

105.   To the best knowledge, information, and belief of Plaintiff, the WB Claimed Property is presently located at the Property.

106.   Plaintiff is the owner of the WB Claimed Property.

107.   Plaintiff is entitled to possession of the WB Claimed Property.

108.   The WB Claimed Property is being detained by Nature Coast.  Nature Coast has no right to the WB Claimed Property.

109.   The WB Claimed Property was being used by or in connection with Plaintiff's performance of its work on the Property.  Following Nature Coast's purported termination of Plaintiff, Nature Coast has prohibited Plaintiff from entering upon or otherwise securing or retrieving the WB Claimed Property.

25

110.   Plaintiff made repeated requests to Nature Coast to enter upon or otherwise retrieve or obtain the return of the WB Claimed Property.

111.   Nature Coast refused Plaintiff's requests and threatened Plaintiff with criminal prosecution if it, or anyone on its behalf, entered upon the Property for such purpose.

112.   On December 24, 2020, Plaintiff made a final demand for the return of the WB Claimed Property.   A true and correct copy of the December 24, 2020 demand is attached hereto as Exhibit "L."

113.   Nature Coast refused to return the WB Claimed Property and responded that Plaintiff "will not be allowed on the construction site and Nature Coast will be forced to call the appropriate authorities should anyone attempt to enter the property."   A true and correct copy of Nature Coast's response, via its attorney, is attached hereto as Exhibit "M."

114.   Nature Coast is liable to Plaintiff for the loss of use of the WB Claimed Property, damages to the WB Claimed Property while wrongfully detained by Nature Coast, and all damages flowing therefrom, plus interest and finance charges.

115.   The WB Claimed Property has not been taken for a tax, assessment, or fine pursuant to law.

116.   The WB Claimed Property has not been taken under an execution or attachment against the property of the Plaintiff.

117.   Plaintiff is entitled to a writ of replevin directed to Nature Coast requiring it to deliver to Plaintiff all WB Claimed Property.

WHEREFORE, Plaintiff, WB Services, Inc., demands a writ of replevin against Nature Coast Development Group, LLC requiring it to deliver to WB Services, Inc. all property belonging to it and judgment for damages against Defendant, Nature Coast Development Group, LLC, plus interest, and costs, and any and all other relief this Court deems just and proper.

## COUNT VI – CONVERSION (NATURE COAST)

118.   Paragraphs 1 through 68 and 109 through 112 are hereby realleged in their entirety and incorporated herein by reference.

119.   Nature Coast has converted some or all of the WB Claimed Property to its own use.

120.   Nature Coast is depriving Plaintiff of the WB Claimed Property permanently or for an indefinite period of time.

121.   Nature Coast's deprivation is inconsistent with Plaintiff's ownership interest in the WB Claimed Property.

122.   Plaintiff has demanded that Nature Coast return the WB Claimed Property.

123.   However, Plaintiff's demand has not been met.

124.   Nature Coast, wrongfully and without authorization, has converted the WB Claimed Property to its own uses, thereby permanently or for an indefinite period of time depriving Plaintiff of its property.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment for damages against Defendant, Nature Coast Development Group, LLC, plus interest, and costs, and any and all other relief this Court deems just and proper.

## COUNT VII – LENDER LIABILITY (BANK)

125.   Paragraphs 1 through 68 are hereby realleged in their entirety and incorporated herein by reference.

126.   The Bank was required to provide construction loan funds for the Project under the Loan Documents.

127.   Fla. Stat. § 713.3471(3)(a) defines "designated construction loan proceeds" as the portion of the loan allocated to actual construction costs of the facility.

128.   The Bank has not distributed or disbursed all construction loan funds under the Loan Agreement or all of the designated construction loan proceeds.

129.   The Bank ceased making advances as required under the Loan Agreement prior to the distribution of all funds available under the Loan Agreement, despite Plaintiff's ongoing performance and without notice by the Bank to Plaintiff.

130.   Pursuant to Fla. Stat., § 713.3471(2)(a), the Bank had an affirmative duty to deliver "written notice" to Plaintiff within "5 business days" that it had made a determination to cease funding under the Loan Agreement.

131.   The Bank never delivered the statutorily required notice to Plaintiff.

132.   The Bank failed to timely notify Plaintiff of its intent to suspend payments under the construction loan.

133.   The Bank violated Fla. Stat., § 713.3471(2)(a), by failing to provide Plaintiff with written notice of its intent to cease further advances or funding under the Loan Agreement.

134.   Unaware that the Bank had made the decision to suspend payments under the Loan Agreement, Plaintiff continued to perform its obligations relating to the Project.

135.   If the Bank had provided written notice of its decision to cease funding, then Plaintiff would have stopped performance under its agreements with Nature Coast and could have mitigated its damages.

136.   The Bank violated Fla. Stat., § 713.3471(2) by failing to give Plaintiff timely notice of making its decision to cease the disbursements of construction loan funds.

137.   The Bank's bad faith and misconduct in failing to provide statutory notice to Plaintiff induced Plaintiff to continue to work on the Project.

138.   The Bank reallocated construction loan proceeds and used such proceeds for non-construction purposes without proper authorization and without notice to Plaintiff.

139.   The Bank continues to retain undisbursed construction loan proceeds.

140.   Pursuant to Florida Statutes, the Bank is liable to Plaintiff.

141.   The Bank is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by the Bank's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Seacoast National Bank, for damages, attorneys' fees, interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT VIII – NEGLIGENCE (BREWER)

142.   Paragraphs 1 through 46 and 56 through 58 are hereby realleged in their entirety and incorporated herein by reference.

143.   Brewer is a registered architect under Florida law and was the architect of record for the Project.

144.   An architect may not perform plans review as an employee of a local government upon any job that the architect or the architect's company designed.

145.   As an architect, Brewer owed a duty to Plaintiff to render his services with the reasonable care that a reasonably careful professional architect or engineer would use under the circumstances.

146.   Brewer breached his duty to Plaintiff by failing to render his services with the degree of care common to other professionals in the community under similar circumstances including, inter alia, failing to furnish drawings, plans, specifications and related work that were sufficient for Plaintiff to perform its work or to perform its work in a timely manner and without delay, failing to prepare and furnish drawings, plans, specifications and related work of a sufficiently high standard to clearly and accurately indicate or illustrate all essential parts of the work, failing to obtain proper plans review, or failing to furnish a design, drawings, plans, specifications and related work that provided for construction in compliance with the applicable building codes, failing to timely issue revisions to bring such documents into compliance, and offering interpretations or ordering work that was neither consistent with nor reasonably inferable from the contract documents.

147.   Brewer breached his duty to Plaintiff by failing to certify payment application as required, improperly performing or delaying his contract administration duties, performing his contract administration duties in bad faith, performing building inspection services improperly and in violation of Florida Building Code, issuing the Notice of Default and Certification of Cause for

Termination in bad faith, failing to exercise independent discretion, decision making, and good-faith motives in issuing the Notice of Default and Certification of Cause for Termination, and issuing an insufficient cure notice.

148.  Brewer's acts and omissions interfered with Plaintiff's ability to perform and complete its contractual obligations.

149.  Plaintiff has been injured and has suffered damages as a result of Brewer's breach of his duty.

150.  Brewer is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by Brewer's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Daniel Brewer, for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

### COUNT IX – NEGLIGENCE (B&B ASSOCIATES)

151.  Paragraphs 1 through 46 and 56 through 68 are hereby realleged in their entirety and incorporated herein by reference.

152.  B&B Associates is a "business organization" as that term is defined in Fla. Stat., § 481.203(4).

153. A business organization may not engage in the practice of architecture unless its qualifying agent is a registered architect under Chapter 481, Florida Statutes.

154. B&B Associates rendered or offered to render services in connection with the design and construction of a structure or group of structures which have as their principal purpose human habitation or use, and the utilization of space within and surrounding such structures.

155. The services rendered or offered by B&B Associates included planning, providing preliminary study designs, drawings and specifications, job-site inspection, and administration of construction contracts.

156. B&B Associates owed a duty to Plaintiff to render its services with the reasonable care that a reasonably careful professional architect or engineer would use under the circumstances.

157. B&B Associates breached its duty to Plaintiff by failing to render services with the degree of care common to other professionals in the community under similar circumstances including, inter alia, failing to furnish drawings, plans, specifications and related work that were sufficient for Plaintiff to perform its work or to perform its work in a timely manner and without delay, failing to prepare and furnish drawings, plans, specifications and related work of a sufficiently high standard to clearly and accurately indicate or illustrate all essential parts of the work,

failing to obtain proper plans review, or failing to furnish a design, drawings, plans, specifications and related work that provided for construction in compliance with the applicable building codes, failing to timely issue revisions to bring such documents into compliance, and offering interpretations or ordering work that was neither consistent with nor reasonably inferable from the contract documents.

158.   B&B Associates breached its duty to Plaintiff by failing to certify payment application as required, improperly performing or delaying his contract administration duties, performing his contract administration duties in bad faith, performing building inspection services improperly and in violation of Florida Building Code, issuing the Notice of Default and Certification of Cause for Termination in bad faith, failing to exercise independent discretion, decision making, and good-faith motives in issuing the Notice of Default and Certification of Cause for Termination, and issuing an insufficient cure notice.

159.   B&B Associates acts and omissions interfered with Plaintiff's ability to perform and complete its contractual obligations.

160.   Plaintiff has been injured and has suffered damages as a result of B&B Associates' breach of its duty.

161.   B&B Associates is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by B&B Associates' acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Barretta & Brewer Associates, Inc., for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT X – VIOLATION OF BUILDING CODE (BREWER)

162.   Paragraphs 1 through 46 and 56 through 68 are hereby realleged in their entirety and incorporated herein by reference.

163.   This cause of action is filed pursuant to Fla. Stat. § 553.84 and is filed against Brewer.

164.   It is a violation of the Florida Building Code for a private provider to provide building code inspection services on any building designed by that person or their firm.

165.   It is a violation of the Florida Building Code for an architect to provide plans review for any job that the architect or the architect's company designed.

166.   Brewer violated applicable building codes.

167.   Plaintiff has been injured and has suffered damages as a result of Brewer's violations of applicable building codes.

168.   Brewer is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by Brewer's acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Daniel Brewer, for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT XI – VIOLATION OF BUILDING CODE (B&B ASSOCIATES)

169.   Paragraphs 1 through 46 and 56 through 68 are hereby realleged in their entirety and incorporated herein by reference.

170.   This cause of action is filed pursuant to Fla. Stat. § 553.84 and is filed against B&B Associates.

171.   It is a violation of the Florida Building Code for a private provider to provide building code inspection services on any building designed by that person or their firm.

172.   It is a violation of the Florida Building Code for an architect to provide plans review for any job that the architect or the architect's company designed.

173.   B&B Associates violated applicable building codes.

174.   Plaintiff has been injured and has suffered damages as a result of B&B Associates' violations of applicable building codes.

175.   B&B Associates is also liable for attorneys' fees, costs and expenses Plaintiff is or will incur to litigate with third-parties caused by B&B Associates' acts or omissions under the Wrongful Act Doctrine.

WHEREFORE, Plaintiff, WB Services, Inc., demands judgment against Defendant, Barretta & Brewer Associates, Inc., for damages, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

Dated this 12th day of January, 2021.

**VITALE LAW, P.A.**

/s/ J. Ben Vitale
J. Ben Vitale
Florida Bar No. 88304
bvitale@VitaleFirm.com
5214 Paylor Lane
Lakewood Ranch, FL 34240
Tel: (941) 552-7887

*Attorneys for Plaintiff*